# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 3789 | DATE | 3/28/2003 |
| CASE TITLE | Baird Credit Corp. v. Seher v. Baird Credit Corp. and Robert W. Baird, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motions to Dismiss the Counterclaim and Third Party Complaint

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Baird Credit Corp.'s Motion to Dismiss the Counterclaim [11-1] and Robert W. Baird, Inc.'s Motion to Dismiss the Third Party Complaint [19-1] are GRANTED in part and DENIED in part. The motions are denied as to Counts I and III, and granted as to Count II. The Court hereby dismisses Count II of the Counterclaim and Third Party Complaint against both Baird Credit Corp. and Robert W. Baird, Inc.

(11) ■ [For further detail see attached memorandum opinion and order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 3 1 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 25 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| mds(lc) | courtroom deputy's initials | 03 MAR 28 PM 6:09 U.S. DISTRICT COURT Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



| | |
|---|---|
| BAIRD CREDIT CORPORATION, | No. 02 C 3789 |
| Plaintiff, | |
| v. | HONORABLE DAVID H. COAR |
| JOSEPH A. SEHER and MARY BETH SEHER, | |
| Defendants, Counter-Plaintiffs, and Third-Party Plaintiffs, | MAR 31 2003 |
| v. | |
| BAIRD CREDIT CORP. and ROBERT W. BAIRD, INC., | |
| Counter defendants and Third-Party Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before this Court is Plaintiff/Counterdefendant, Baird Credit Corporation's ("BCC"), Motion to Dismiss the Counterclaim against it pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6). Also before this Court is Third Party Defendant Robert W. Baird & Co., Inc.'s ("RWB") Motion to Dismiss the Third Party Complaint against it. For the reasons stated in the opinion below, BCC's and RWB's Motions to Dismiss are GRANTED in part and DENIED in part.

### Factual and Procedural Background

BCC filed a two-count breach of contract complaint against Joseph A. Seher and Mary Beth Seher ("Sehers"), alleging that the Sehers have defaulted on their contractual loan

25

obligations to BCC. The Complaint alleges that, as a result of this default, the Sehers owe BCC approximately $4,237,424.08 in principal and accrued interest. The Sehers filed a Counterclaim and Third Party Complaint against BCC and RWB (collectively referred to as "BCC/RWB"). Count I of the Counterclaim and Third Party Complaint is a breach of contract claim, in which the Sehers allege that BCC/RWB failed to liquidate the collateral stock (shares of ABC-NACO) pursuant to the terms of the Collateral Pledge Agreements. The Sehers further allege that, had BCC/RWB liquidated the stock, the proceeds of the sale would have been sufficient to cover the outstanding debt, and the Sehers would have received a $1.6 million surplus. In Counts II and III of the Counterclaim and Third Party Complaint, the Sehers allege that BCC/RWB breached their fiduciary duty to the Sehers, and violated the Wisconsin Uniform Commercial Code in failing to liquidate the collateral stock. Before this Court are BCC's and RWB's Motions to Dismiss the Counterclaim and Third Party Complaint.

## Discussion

### I. Motion to Dismiss Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. In evaluating the motion, the Court accepts as true all facts and allegations in the complaint and makes all reasonable inferences in the plaintiff's favor. See Holman v. Indiana, 211 F.3d 399, 402 (7th Cir. 2000). Under Federal Rule of Civil Procedure 8(a), a complaint need only state a short and plain statement of the claim showing that the pleader is entitled to relief to be sufficient. Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993). Complaints should only be dismissed if it is clear that no set of facts in support of the claim would entitle the plaintiff to relief. See Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69. 73 (1984)). The Sehers

assert three causes of action in both the Counterclaim and Third-Party Complaint. This Court addresses each count and party in turn.

## II. BCC's Motion to Dismiss the Counterclaim

### A. Count I - Breach of Contract

The contracts at issue in this case--the Demand Promissory Notes and the Collateral Pledge Agreements--provide that Wisconsin law governs, and no party contests the applicability of Wisconsin law. In Count I, the Sehers allege that BCC breached its contracts by failing to liquidate the collateral stock when it promised to do so. BCC argues that the Sehers fail to state a claim upon which relief can be granted because, under the contracts, BCC had no obligation to liquidate the collateral stock absent a written demand by the Sehers. BCC further argues that any oral promises upon which the Sehers rely are insufficient as a matter of law because the Sehers have not adequately pled that these promises modified, replaced, or otherwise superceded the pertinent provisions of the written contracts. The Sehers counter that BCC told them that, pursuant to "regulations," it was required to liquidate the stock, and that these banking regulations are an express part of the contract.

The Demand Promissory Notes ("Notes") and the Collateral Pledge Agreement ("Agreement") provide that BCC has the sole option to liquidate the collateral stock in the event of a default. Specifically, the Notes state:

> If a default occurs under the terms of this Note . . . then BCC may, at its sole option, exercise any and all rights and remedies at law or in equity including without limitation . . . all rights of BCC against any and all of Borrower's financial assets, investment property, securities . . . held as security by BCC for payment of the outstanding balance under this Note.

If the Sehers wanted to liquidate the collateral stock, under the Agreement, the Sehers could have made a written demand to BCC to liquidate. The Agreement states in pertinent part:

> Any requests concerning disposition of the Collateral must be in writing and be received by the Secured party. . . . Secured Party may refuse to sell any Collateral even though requested in writing, unless the proposed sale plus other sums tendered by Debtor, if any, will pay in full all Obligations, or substitute Collateral satisfactory to Secured Party is delivered to Secured Party.

Thus, the unambiguous language of the contracts demonstrates that BCC was not required to liquidate the collateral stock.[1] However, contrary to BCC's belief, the fact that the option to liquidate was discretionary does not automatically defeat the Sehers' breach of contract claim. Wisconsin law, like many other states, reads the duty of good faith into every contract. Market Street Assocs. Ltd. Partnership v. Frey, 941 F.2d 588, 593-96 (7th Cir. 1991) (applying Wisconsin law). This duty requires BCC to exercise its discretion under the contracts in a manner that is consistent with the reasonable expectations of the parties. Beraha v. Baxter Healthcare Corp., 956 F.2d 1436, 1444 (7th Cir. 1992) (interpreting the covenant of good faith and fair dealing under Illinois law). Whether BCC exercised its discretion in good faith under the circumstances in this case is a factual issue that cannot be resolved in a motion to dismiss. Therefore, BCC's motion to dismiss is denied as to Count I of the Counterclaim.

B. Count II - Breach of Fiduciary Duty

In Count II of the Counterclaim, the Sehers allege that BCC's retention of the collateral stock constituted a breach of fiduciary duty. BCC moves to dismiss this count, arguing that there is no fiduciary relationship between a lender (BCC) and a borrower (the Sehers). The Sehers counter that, because BCC took control of the collateral and the underlying business, a fiduciary

---

[1] The Sehers' assertion that certain unidentified banking regulations, which are express terms of the contract, obligated BCC to liquidate does not defeat BCC's motion to dismiss. While the law of the jurisdiction in which the contract is made is a term of every contract, Norfolk and Western Ry Co. v. Am. Train Dispatchers' Assn., 499 U.S. 117, 129 (1991), it is axiomatic that the party asserting breach of contract identify the law that supposedly imposes said obligation.

duty arose between BCC and the Sehers. This Court disagrees.

Under Wisconsin law, a fiduciary relationship between a borrower and lender can be established by either the terms of the contract or as being implied by law due to the factual situation surrounding the transactions and relationships of the parties to each other and to the questioned transactions. Production Credit Ass'n v. Croft, 423 N.W.2d 544, 546-548 (Wis. Ct. App. 1988). A contract may establish a lender/borrower fiduciary relationship if it vests in the lender control of the borrower's property. Id. at 546-47. Further, a fiduciary relationship also may be applied in law if "a borrower demonstrates that a lender acted as a financial advisor to a subservient borrower and the borrower relied on the lender's advice." Id. at 547 (internal citations omitted).

In Croft, the Counterclaimant Debtors argued that their contract with the Counterdefendant Lender transcended the usual lender-borrower relationship and established a fiduciary relationship because of the disparity in knowledge and experience between the lender and the debtor, and because the loan agreements gave the lender ultimate control of the repayment requirements. Id. at 546. The court, however, disagreed and found that no fiduciary duty arose even though the lender gave financial advice and/or encouragement to the debtor. Id. at 547. The Court reasoned that "[s]o long as the farmer makes his or her own business decisions and the advice given by the lender is nothing more than optional advice or is reasonably related to protection of the lender's interest in collateral, lenders should not be treated as having a fiduciary responsibility to the borrower." Id.

In contrast, in Production Credit Ass'n v. Vodak, 441 N.W.2d 338, 346 (Wis. App. Ct. 1988), the court held that a fiduciary duty arose between the lender and borrower when the lender not only took over the collateral, but also exercised substantial control over the underlying

business. The lender created this fiduciary relationship by including a detailed farm plan in the loan documentation itself in which the lender mandated the debtors increase their herd size, set farm goals, and accelerate construction of a barn. Id. at 345. The trial court noted "[the lender] would make a loan much like a bank would make a loan . . . but then they would impose through the device of the security agreements almost a receivership or trusteeship over the operating capital of the farmer and the operating decisions . . . ." Id. The court therefore found that the lender had adopted a role that went beyond the traditional role of a lender.

Here, unlike the debtors in Vodak, the Sehers have not pled sufficient facts in their Counterclaim to state a breach of fiduciary duty claim. While the Sehers conclusively state in their brief that BCC took over the collateral and the underlying business and "exercised dominion and control over both," unlike the Vodak debtors, the Sehers do not plead facts in their Counterclaim that would support that assertion. First, the Sehers' focus on BCC's alleged relationship and influence with ABC-NACO does not establish an inference that BCC exercised the requisite control over the *Sehers'* business that would create a fiduciary relationship. Second, the Counterclaim merely alleges that BCC had exclusive control over the Sehers' ABC-NACO shares, which was pledged as collateral for the Sehers' loans, and not that it had control over the underlying business. As the court stated in Croft, "[l]enders, under certain circumstances, require borrowers to comply with loan covenants restricting the operation of the borrower's business. . . . These covenants often include promises to maintain the collateral and to maintain lender approval of certain transactions." Id. at 546. Thus, nothing in the Counterclaim indicates BCC undertook a role different from a traditional lender.

The Sehers attempt to cure their pleading deficiencies by alleging in their brief in opposition to the motion to dismiss that BCC controlled the business and provided management

advice. This Court, however, only considers the factual allegations of the Counterclaim. Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 198 (7th Cir. 1985). As a result, the Sehers' allegations that lie outside the complaint--most of which are conclusory and not factual anyway--are irrelevant to this Court's analysis. Id. Therefore, even under the most liberal reading of the allegations of the Counterclaim, this Court finds that BCC's actions do not rise to the level of a fiduciary. BCC's motion to dismiss is granted as to Count II of the Counterclaim.

C. Count III - The Wisconsin Uniform Commercial Code

In Count III of the Counterclaim, the Sehers allege that BCC's retention of the collateral stock constituted a violation of the Wisconsin Uniform Commercial Code, Wis. Stat. Ann. §409.101, *et seq*. Namely, the Sehers allege BCC violated sections 9-610, and 9-207. Section 9-610 provides BCC the statutory option to sell the collateral upon default: "After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." Section 9-207 states in pertinent part: "a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession[.]" BCC argues that this claim should be dismissed because the UCC does not impose an *obligation* on BCC to dispose of the collateral upon default.[2] However, as discussed supra Section II.A., the fact that the option to liquidate was discretionary does not automatically defeat the Sehers' claim. The UCC expressly prescribes the obligations of good faith, diligence, reasonableness and care.[3] As with the breach of contract

---

[2] In support, the Sehers cite to an unpublished opinion that, under Wisconsin Rule of Civil Procedure 809.23(3), is of no precedential value and cannot be cited by any court of the state. This Court thus disregards reliance on that case.

[3] While the Collateral Pledge Agreement between the parties stipulates what reasonable care in the custody and preservation of Collateral in its possession *does not* include, these actions do not, on their face, preclude an action under the UCC given the factual allegations in the

claim, whether BCC exercised its discretion within the standards prescribed in the UCC under the circumstances in this case is a factual issue that cannot be resolved in a motion to dismiss. Therefore, BCC's motion to dismiss is denied as to Count III of the Counterclaim.

## II. RWB's Motion to Dismiss the Third-Party Complaint

Concurrently before this Court is RWB's Motion to Dismiss the Third Party Complaint against it. The Third Party Complaint consists of the identical three counts asserted in the Counterclaim against BCC. RWB moves to dismiss the Third Party Complaint on grounds that it has no relationship to the Sehers--RWB is not a party to the contracts, it did not lend the Sehers money, nor is it the secured party having Article 9 rights and duties pertaining to the pledged collateral. The Sehers counter that RWB is jointly and severally liable as BCC's alter ego.

The alter ego doctrine is an equitable remedy used in certain situations to displace the basic principle of the law of corporations that a corporation is a separate legal entity from its shareholders, directors and officers, and other corporations with which it may be affiliated. See Consumer's Co-op v. Olsen, 419 N.W.2d 211, 213 (Wis. 1988). This doctrine enables a court to disregard corporate form when used to accomplish improper purpose. Id.; see also Select Creations, Inc. v. Paliafito Am., Inc., 852 F. Supp. 740 (E.D. Wis. 1994). For example, a court may pierce the veil of corporation when evidence shows a corporation is merely the alter ego of its owner. Olen v. Phelps, 546 N.W.2d 176, 180 (Wis. App. Ct. 1996).

Here, RWB argues that the Third Party Complaint against it should be dismissed in its entirety because the Sehers did not plead the "alter ego" doctrine in the Third Party Complaint. While the words "alter ego" or "instrumentality" do not appear in the pleadings, this Court finds

---

Counterclaim. At this stage of the proceedings, it is unclear that no set of facts in support of the claim would entitle the plaintiff to relief on this Count.

that the Sehers have pled sufficient facts to support their theory. Namely, the Sehers allege both RWB and BCC are subsidiaries of Northwestern Mutual Life Insurance Company that operate out of a single location; they share staff, executives, and operations; and they both operate under a single trade name "Baird." As stated before, the doctrine of piercing the corporate veil is an equitable remedy, so that it is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as breach of contract, see In re Rehabilitation of Centaur Co., 606 N.E.2d 291, 300 (Ill. App. 1992) citing 1 Fletcher Cyclopedia of Corporations § 41.25 at 603 (1990). Therefore, this Court cannot state at this point in the proceedings that no set of facts in support of the Sehers' claim would entitle them to relief against RWB.

As each Count in the Third Party Complaint is identical to the counts in the Counterclaim and is based on the same facts and conduct, for the reasons stated supra Part I, the Court denies RWB's motion to dismiss as to Counts I and III, and grants the motion as to Count II.

## Conclusion

For the foregoing reasons, BCC's and RWB's Motions to Dismiss are GRANTED in part and DENIED in part. The motions are denied as to Counts I and III, and granted as to Count II. The Court hereby dismisses Count II of the Counterclaim and Third Party Complaint against both BCC and RWB.

Enter:

_____
David H. Coar
United States District Judge

**Dated: March 28, 2003**